UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WALGREENS SPECIALTY PHARMACY, LLC d/b/a ALLIANCERX WALGREENS PRIME,**<br><br>Plaintiff,<br><br>v.<br><br>**ATRIUM ADMINISTRATIVE SERVICES, INC.,**<br><br>Defendant. | **Civil Action No. 19-12756 (CCC)**<br><br>**OPINION AND ORDER** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendant Atrium Administrative Services, Inc. ("Defendant") and non-parties GHU OP 101, LLC, GHU PROP 101, LLC, Park Ridge AL MR, LLC, Park Ridge SNF MR, LLC, Wayne SNF MR, LLC, Wayneview SNF MR, LLC (collectively the "Potential Buyer Entities") and Spring Hills, LLC ("Spring Hills") (together with Defendant, the "Movants") to quash and/or for a protective order with respect to subpoenas served upon the Potential Buyer Entities, and subpoenas served upon MIDCAP Financial Services, LLC and MIDCAP Funding VII Trust (collectively the "Lenders") [ECF No. 30]. Plaintiff Walgreens Specialty Pharmacy, LLC d/b/a Alliancerx Walgreens Prime ("Plaintiff") opposes Movants' motion [ECF No. 32].[1] For the reasons set forth below, Movants' motion to quash and/or for a protective order is **GRANTED in part and DENIED in part**.

---

[1] The Court notes that Movants filed a Reply to Plaintiff's Opposition [ECF No. 33] and an accompanying declaration [ECF No. 33-1]. However, no replies are permitted pursuant to L. Civ. R. 7.1(d)(3) and Movants did not request leave to file a sur-reply. In the interest of reaching a full and final resolution of this issues, the Court has read and considered the arguments set forth in the unauthorized brief.

1

Additionally, Plaintiff moves to file a First Amended Complaint [ECF No. 34]. Defendant opposes Plaintiff's motion [ECF No. 40]. For the reasons set forth below, Plaintiff's motion to amend the Complaint [ECF No. 34] is **GRANTED**.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint on May 21, 2019. ECF No. 1. In this action, Plaintiff seeks to recover amounts it alleges are owed by Defendant as reimbursement for dispensing a medication called Kanuma to a member of Defendant's self-funded employee health benefit and prescription plan (the "Atrium Plan"). *See* ECF No. 1. Plaintiff asserts three counts against Defendant for its alleged failure to pay such benefits: (1) violation of ERISA, (2) promissory estoppel, and (3) unjust enrichment. *See id.* Defendant filed an Answer to the Complaint on July 19, 2019. ECF No. 16.

On December 16, 2019, the Court entered a Pretrial Scheduling Order [ECF No. 23], and the parties commenced discovery. On February 12, 2020, Defendant, together with the Potential Buyer Entities and Spring Hills, requested leave to file a protective order with respect to the subpoenas served on the Potential Buyer Entities and Spring Hills. ECF No. 24. The Court granted leave for Defendant, Spring Hills, and the Potential Buyer Entities to file a motion to quash and/or for a protective order. ECF No. 29.

The subpoenas at issue fall into two categories: (1) those directed to the Potential Buyer Entities and Spring Hills and (2) those directed to the Lenders. Movants claim that the Potential Buyer Entities consist of six single-purpose entities created in connection with the potential acquisition of certain assets of Defendant pursuant to an arms'-length transaction, while Spring Hills has nothing to do with this potential acquisition. ECF No. 30-1 at p. 6. For purposes of this motion, the Court will only consider the subpoenas directed to the Potential Buyer Entities

because, as discussed *infra*, the Court will allow Plaintiff to amend to add Spring Hills as a direct party to this litigation thus rendering the third-party subpoena served on Spring Hills moot.

With respect to the subpoenas directed to the Potential Buyer Entities, which are identical to one another, Movants are only moving to quash and/or for a protective order as to requests 4-6 and 8-10. ECF No. 30-1 at p. 7.[2] Generally, requests 4-6 seek documents relating to the ownership structure of each of the Potential Buyer Entities and their relationship to one another. *See, e.g.*, Declaration of Ross Pearlson ("Pearlson Decl."), Ex. A. Requests 8-9 seek all agreements between the Potential Buyer Entities and any Atrium-related entities. *See id.* Finally, request 10 seeks all applications for licensure or for any change in licensure on behalf of any Atrium-related entity. *See id.* With respect to the subpoenas directed to the Lenders, which are identical to one another, Defendant seeks to quash the entirety of the subpoenas. *See, e.g.*, Pearlson Decl., Ex. H.

Pursuant to Standing Order 2020-04, which extended all filing deadlines in civil matters that fell between March 25, 2020 and April 30, 2020, the date to file any motion to amend pleadings was extended by forty-five (45) days. On April 24, 2020, Plaintiff filed a motion for leave to file an amended complaint. ECF No. 34. Plaintiff's proposed amendments include adding Spring Hills as a party to this litigation and asserting a claim of successor liability against Spring Hills.

## II.   MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

---

[2] As to the remaining requests to the Potential Buyer Entities, requests 1-3, 7, 11-19, the Potential Buyer Entities provided written responses and objections to those requests on February 18, 2020. ECF No. 30-1 at p. 8.

>resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999).

>Pursuant to Rule (26)(b)(2)(C), courts are required to limit discovery where:
>
>>(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>>(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>>(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Similarly, pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" In moving for a protective order, the "burden of persuasion [is] on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). The party seeking a protective order "must show good cause by demonstrating a particular need for protection." *Id.*

Establishing "good cause" requires the movant to "specifically demonstrate [ ] that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994)).

Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b). *OMS Investments, Inc. v. Lebanon Seaboard Corp.*, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008). Furthermore, the Court's ability to force compliance with a subpoena is limited by Rule 45, which provides in pertinent part that "on timely motion" the Court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Under Rule 45, "courts have significant discretion" to quash or modify a subpoena where the discovery sought is irrelevant, or compliance with the subpoena would be "unreasonable and oppressive." *First Sealord Sur. v. Dunkin & Devries Ins. Agency*, 918 F.Supp.2d 362, 382-83 (E.D. Pa. 2013) (quotations and citations omitted). The Court also notes that "'[a] nonparty to an action 'is afforded greater protection from discovery than a normal party.'" *Kelley v. Enhanced Recovery Co., LLC*, No. 15-6527, 2016 WL 8673055, at *2 (D.N.J. Oct. 7, 2016) (quoting *Chazanow v. Sussex Bank*, 2014 WL 2965697, at *3 (D.N.J. July 1, 2014)). *See also Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990) (noting "standards for nonparty discovery require a stronger showing of relevance than for simple party discovery").

In applying Rules 26 and 45, the Court must balance several competing factors in assessing the reasonableness of a subpoena: (1) relevance, (2) the party's need for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the subpoena recipient's status as a nonparty to the litigation. *See generally Biotechnology Value Fund, L.P. v. Celera Corp.*, No. 14-

5

4046, 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014). The resolution of the instant dispute lies within the Court's sound discretion. *In re: Riddell Concussion Reduction Litig.*, No. 13–7585, 2016 WL 4119807, at *2 (D.N.J. July 7, 2016); *Forrest v. Corzine*, 757 F. Supp.2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances.").

First, the Court will briefly address Plaintiff's argument regarding the timeliness of Movants' Motion with respect to the subpoenas directed to the Potential Buyer Entities. Plaintiff argues that Movants' Motion should be denied as untimely because it was not filed within fourteen days of service of the subpoenas. ECF No. 32 at p. 12. Generally, however, counsel must move to quash a subpoena served on a non-party before the return date listed on the subpoena. *See Toole v. Cordovani*, No. 13-6720, 2014 WL 132002, at *2 (D.N.J. Jan. 2014). Here, the return date on the subpoenas was February 10, 2020 [*see* Pearlson Decl., Ex. A], and Movants note that counsel agreed to extend the return date of the subpoenas to February 18, 2020. ECF No. 30-1 at p. 6. Movants requested leave to file a motion for a protective order on February 12, 2020 [ECF No. 24]. Thus, the Court considers Movants' Motion timely.

### A. Subpoenas directed to the Potential Buyer Entities

Next, the Court considers the subpoenas directed to the Potential Buyer Entities. It appears that Movants make two primary arguments to quash the subpoenas directed to the Potential Buyer Entities. First, Movants argue that Plaintiff's sole basis for seeking documents from the Potential Buyer Entities is to determine the proper parties to this litigation, which Plaintiff may obtain through more convenient means such as party discovery. ECF No. 30-1 at pp. 11-13. Specifically, Movants note that Defendant has already provided a list of 45 entities for whose employees the Atrium Plan was established, including entities that have entered receivership, and that this

information can be used to determine the proper parties to this litigation. *Id.* at pp.12-13. Second, Movants claim that Plaintiff is improperly attempting to obtain evidence to support a claim of successor liability—not yet pleaded at the time of service of the subpoenas.[3] *Id.* at pp. 13-14.

The Movants are correct that "'[d]iscovery is not a fishing expedition for potential claims or defenses.'" *Hashem v. Hunterdon Cty.*, No. 15-8585, 2017 WL 2215122, at *3 (D.N.J. May 18, 2017) (quoting *Robinson v. Horizon Blue Cross–Blue Shield of New Jersey*, No. 12–2981, 2013 WL 6858956, at *2 (D.N.J. December 23, 2013)). For example, "subpoenaed information is not relevant to subject matter involved in the pending action if the inquiry is based on the party's mere suspicion or speculation." *Id.* (quotations and citation omitted). Instead, the information sought by the subpoena must be "relevant to the claims or defenses in [the] action" *Id.*

Plaintiff claims the requests are relevant to this litigation and are not for the improper purposes that Movants allege. ECF No. 32 at p. 17. Plaintiff argues the subpoenas directed to the Potential Buyer Entities seek admissions concerning the Atrium Plan's liabilities in the context of Defendant's sale negotiations with the Potential Buyer Entities, which may include statements about reserves established with any potential buyer and non-privileged evaluations of the Atrium Plan's claims. *Id.* at p. 13. Plaintiff also claims that the requests are relevant in investigating Defendant's assertion that it has not been responsible for management of the Atrium Plan or facilities since August 2014. *Id.* at p. 14. Plaintiff argues that it has reason to believe that relationships may already exist between the Potential Buyer Entities and Defendant based upon public statements, [4] and seeks to investigate these relationships. *Id.*

---

[3] Plaintiff filed a motion to amend its pleadings on April 24, 2020 [ECF No. 34]. Within that motion, Plaintiff seeks to add Spring Hills as a party to the litigation and a claim of successor liability against Spring Hills. *See id.*

[4] The Court also notes that the Potential Buyer Entities and Defendant are represented by the same counsel in this Motion as no other counsel has entered an appearance on behalf of the Potential Buyer Entities.

Upon review of requests 4-6, it is clear to the Court that these requests are outside the bounds of discovery permitted under Rule 26 and Rule 45. Requests 4-6, which seek documents concerning the organization, structure, and relationships between the Potential Buyer Entities, bear little relevancy to this litigation. The Court fails to see how obtaining the structure and organization of each Potential Buyer Entity may contain any admissions relating to Patient A's claims, or even more generally the Atrium Plan. Plaintiff's only remaining basis for the requests is to explore the suspected relationships between the Potential Buyer Entities, and this type of inquiry is not permitted under Rule 26. *See Claude P. Bamberger Intern., Inc. v. Rohm and Haas Co.*, C.A. No. 96–1041(WGB), 1998 WL 684263, at *2 (D.N.J. April 1, 1998) ("while the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so.") (quotation and citation omitted).

Similarly, the Court finds that request 10, which seeks all applications for licensure or any change in licensure on behalf of any Atrium-related entity, is outside the scope of discovery in this matter. Again, it appears to the Court that Plaintiff's only basis for this request is to explore the suspected relationships between the Potential Buyer Entities and Defendant. While the Court notes that it certainly appears that some relationship exists between the Potential Buyer Entities and Defendant, the Court agrees with Movants that licensure agreements are unlikely to lead to admissible evidence concerning the Atrium Plan or Patient A's claims. Thus, the Court will grant Movants' motion to quash requests 4-6 and request 10 of the subpoenas directed to the Potential Buyer Entities.

It appears to the Court, however, that requests 8-9, bear some relevancy to the issues within this litigation. These requests seek all agreements between any Atrium-related entities and the

8

Potential Buyer Entities. While Movants claim that no relationship exists between the Potential Buyer Entities and Defendant, Movants have stated that the Potential Buyer Entities and Defendant are in negotiations to acquire certain assets of Defendant. It is not apparent from this statement whether this acquisition involves or implicates the Atrium Plan; however, the Court agrees with Plaintiff that if any agreements contain information on the Atrium Plan, such as its liabilities or its evaluation, then this may lead to admissible evidence concerning Patient A's claims.

Furthermore, if as Movants claim the Potential Buyer Entities have no connection to Defendant or any Atrium-related entities beyond arms'-length negotiations, then there will be little burden imposed by the requests as there will be few, if any, responsive documents. Although the Potential Buyer Entities are non-parties, considering the minimal burden and the relevancy of the requests, the Court is inclined to permit discovery. On the other hand, requests 8-9 do appear quite broad as these request "all agreements" between the Potential Buyer Entities and Atrium-related entities without limitations. These requests are not narrowly tailored to specifically discover information relating to the Atrium Plan. Accordingly, the Court will grant in part Movants' request for a protective order on requests 8-9 and limit requests 8-9 to all agreements implicating and/or containing information on the Atrium Plan between the Potential Buyer Entities and the Atrium-related listed in the subpoenas.

### B. Subpoenas directed to the Lenders

The Court now turns its attention to the subpoenas directed to the Lenders. First, the Court considers whether Defendant has standing to move to quash the subpoenas on behalf of the Lenders. Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed. *See Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434–435 (E.D.Pa. 2001). However, "a party has standing to bring a Motion to Quash or modify a subpoena upon a nonparty

when the party claims a personal privilege in the production sought." *Schmulovich v. 1161 R. 9, LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) (citations omitted). Here, Defendant claims that the documents sought from the Lenders implicate Defendant's private financial affairs, and thus confer standing upon Defendant to move to quash the subpoenas based on relevancy and confidentiality. ECF No. 30-1 at p. 12, n. 3. The Court agrees and finds that Defendant has standing to challenge the subpoenas to the Lenders since it encompasses their private financial affairs. *See Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2011 WL 2670948, at *5 (D.N.J. June 30, 2011).

Next, the Court considers Defendant's arguments with respect to the relevancy of the subpoenas directed to the Lenders. Defendant argues the same grounds for quashing the subpoenas directed to the Lenders as was argued with respect to the subpoenas directed to the Potential Buyer Entities: that Plaintiff's sole bases for the subpoenas are to ascertain the proper parties to this litigation and to support a claim of successor liability not yet pleaded. ECF No. 30-1 at pp. 11-14. Additionally, Defendant argues that Plaintiff's requests 1 and 2 in the subpoenas to the Lenders are improper because Plaintiff is attempting to discover information relating to the collectability of a future judgment. *Id.* at pp. 15-16.

The Court agrees that Federal Rule of Civil Procedure 26 "[does] not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence." *McCurdy v. Wedgewood Capital Mgmt. Co.*, No. CIV. A. 97-4304, 1998 WL 964185, at *10 (E.D. Pa. Nov. 16, 1998). "However, discovery of facts related to a defendant's financial status or assets is permissible if this information is relevant to a pending claim." *Liberty Mut. Ins. Co. v. Universal*

10

*Enterprises, Inc.*, No. 2:09-CV-03591, 2010 WL 11711028, at *2 (E.D. Pa. Mar. 18, 2010) (citations omitted).

In this case, Plaintiff argues the requests are relevant to the issues within this litigation because the subpoenas directed to the Lenders seek documents that include financial reporting obligations and are therefore likely to include statements about the claims at issue and related liabilities. ECF No. 32 at p. 13. Furthermore, Plaintiff notes that Plaintiff and the Lenders have already conferred to narrow the requests to include only a handful of Atrium-related entities as outlined in an email dated January 27, 2020 from Plaintiff's counsel. *See* Declaration of Alexis Hawker ("Hawker Decl."), Ex A. Plaintiff also claims that the requests are relevant in testing the validity of Defendant's claim that it has not served as a management entity for the Atrium Plan since in or around 2014. ECF No. 32 at pp. 13-14.

Upon review of the requests directed to the Lenders, the Court finds that requests 1-3 are relevant apart from the collectability of a future judgment. Requests 1-3, which seek loan applications, financial records, communications regarding financial statements, and communications regarding obligations under the Atrium Plan between the Lenders and certain Atrium-related entities as agreed to in the January 27, 2020 email, may contain, or may likely lead to, evidence regarding Patient A's claims under the Atrium Plan—the crux of this litigation. In light of the broad standard for relevancy at the discovery stage, the Court finds that Defendant has failed to establish that this information is not relevant to Plaintiff's claims and that the information would only be used to assess Defendant's ability to satisfy judgment. Accordingly, the materials sought in requests 1-3 are discoverable and the Lenders will provide responses and make appropriate productions.

With respect to request 6, which seeks all agreements between any Atrium-related entity and any buyer, the Court finds that this request is also relevant to the issues within this litigation. As discussed *supra*, any agreements between any buyer and any Atrium-related entity may contain statements regarding the Atrium Plan leading to admissible evidence concerning Patient A's claims. However, request 6 is not narrowly tailored to discover information pertaining to the Atrium Plan even under the parameters defined by the January 27, 2020 email, which narrowed the scope of subpoenas. Thus, the Court will grant in part Defendant's request for a protective order on request 6 and limit request 6 to all agreements implicating and/or containing information on the Atrium Plan.

Requests 4-5 and request 7, however, do not appear relevant to the issues in this litigation. These requests, similar to requests 4-6 and request 10 directed to the Potential Buyer Entities, seek documents about the organization and structure of Atrium-related entities and any potential buyers. The Court again fails to see how the corporate formalities of Atrium-related entities or potential buyers may lead to admissible evidence regarding Patient A's claims or the Atrium Plan, and the only basis for these requests is Plaintiff's suspicion that relationships already exist between the Potential Buyer Entities and Defendant. Accordingly, the Court will grant Defendant's request to quash requests 4-5 and request 7 directed to the Lenders.

Finally, Defendant argues for a protective order based on confidentiality because requests 1 and 2 seek private financial and business information. ECF No. 30-1 at p. 16. Plaintiff responds that a discovery confidentiality order has already been entered in this matter [ECF No. 19] and has been provided to the Lenders. Thus, Plaintiff claims that reliance on the existing confidentiality order is the appropriate way to address Defendant's concerns. ECF No. 32 a p. 21. The Court agrees. Defendant's concerns regarding any private financial information are adequately addressed

by the discovery confidentiality order already entered in this matter, which explicitly covers financial materials and can be designated confidential by parties and non-parties alike. *See* ECF No. 19. Accordingly, the Court denies Defendant's request of entry of a protective order for requests 1 and 2.

### III. MOTION TO AMEND

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, "[t]he Third Circuit has consistently emphasized the liberal approach to pleading embodied by Rule 15." *Endo Pharma v. Mylan Techs Inc.*, 2013 U.S. Dist. LEXIS 32931, at *4 (D. Del. Mar. 11, 2013). The Court should only deny leave when these factors "suggest that amendment would be 'unjust'. . .." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

Defendant does not assert that Plaintiff's motion is unduly delayed, made in bad faith, a repeated failure to cure deficiencies, or unduly prejudicial, but rather Defendant asserts that Plaintiff's motion for leave to amend should be denied as futile. ECF No. 40 at pp. 8-10. An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally

insufficient on its face." *Harrison Beverage Co.,* 133 F.R.D. at 468 (quotations and citation omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). Under a Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary to survive such a motion. *Antoine v. KPMG Corp.*, 2010 WL 147928, at \*6 (D.N.J. Jan. 6, 2010). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. *Meadows v. Hudson County Bd. of Elections*, 2006 WL 2482956, at \*3 (D.N.J. Aug. 24, 2006).

Defendant contends that Plaintiff's proposed claim for successor liability against Spring Hills is futile because Spring Hills has not acquired assets of Defendant or its related entities or facilities. ECF No. 40 at p. 8. Defendant relies on a sworn declaration of Vincent Tufariello, submitted in connection with Movants' Reply regarding the Motion to Quash, attesting that there has been no acquisition of assets of any Atrium related entity by Spring Hills [ECF No. 33-1, ¶ 5], and that there is no legal basis to impose successor liability on a potential, or anticipated purchaser of an entity's assets. ECF No. 40 at p. 9. Plaintiff, however, counters that Defendant does not have standing to assert a futility argument on behalf of Spring Hills on the successor liability count. ECF No. 43 at pp. 2-3.

The Court agrees with Plaintiff. "[C]urrent parties 'unaffected by [the] proposed amendment' do not have standing to assert claims of futility on behalf of proposed defendants." *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-5592, 2014 WL 988829, at \*2 (D.N.J. Feb. 27, 2014) (citation omitted). While Defendant may be correct in its assertions regarding the viability of Plaintiff's proposed claim of successor liability, it appears to the Court

that Defendant does not have standing to assert this argument on behalf of Spring Hills.[5] Furthermore, the Court finds ruling on Defendant's futility arguments in the context of the present motion would require legal determinations better suited for a motion to dismiss. Accordingly, the Court declines to find at this juncture that Plaintiff's proposed claim for successor liability is clearly futile. Based on the foregoing, Plaintiff's motion for leave to file an Amended Complaint is **GRANTED**.

### IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this **13th** day of **October, 2020**,

**ORDERED** that Movants' motion to quash and/or for a protective order is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Movants' motion to quash requests 4-6 and request 10 directed to the Potential Buyer Entities is **GRANTED**; and it is further

**ORDERED** that the discovery sought in requests 8-9 directed to the Potential Buyer Entities shall be limited to all agreements implicating and/or containing information on the Atrium Plan between the Potential Buyer Entities and the Atrium-related entities listed in the subpoenas; and it is further

**ORDERED** that Defendant's motion to quash requests 1-3 directed to the Lenders is **DENIED**; and it is further

---

[5] Even if counsel for Defendant raises this argument as counsel for Spring Hills, the Court similarly concludes that such a futility argument is improper. "Proposed defendants 'do not have standing to oppose' a motion to amend 'because they are not yet named parties[.]'" *Custom Pak Brokerage, LLC*, 2014 WL 988829, at *2.

15

**ORDERED** that the discovery sought in request 6 directed to the Lenders shall be limited to all agreements implicating and/or containing information on the Atrium Plan; and it is further

**ORDERED** that Defendant's motion to quash requests 4-5 and request 7 directed to the Lenders is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for leave to amend [ECF No. 34] is **GRANTED**; and it is further

**ORDERED** that Plaintiff shall file and serve its Amended Complaint within **seven (7) days** from the date of this Order.

    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**